## MEYER v. UNITED STATES.

Civ. 33-254.

United States District Court
S. D. New York.

Oct. 11, 1948.

Henry Woog, of New York City, for plaintiff.

John F. X. McGohey, of New York City (John M. Cunneen, of New York City, of counsel), for the United States.

RIFKIND, District Judge.

The action was brought for the recovery of taxes erroneously assessed and collected for the taxable years 1940 and 1941. It was tried upon a stipulation of facts and the testimony of the taxpayer. The facts are:

The taxpayer is the widow of one Jonas Meyer, who died in October, 1939. At the time of his death Jonas Meyer was doing business in partnership with his son, Z. Edwin Meyer, under written articles of partnership. These articles provided that, upon the death of Jonas Meyer, the surviving partner, Z. Edwin Meyer, should have the power to exercise one of three options, as follows:

"In the event of the death of Jonas Meyer, prior to the death of Z. Edwin Meyer, then the latter shall have the option either to continue the business or to sell or liquidate. * * *

"If Z. Edwin Meyer elects to continue the business, either alone, or with a new partner or partners, then he may take over the business and its assets and liabilities

934

and he may use therein either the firm name of F. & J. Meyer or any other name. If Z. Edwin Meyer elects to use the hereinafter mentioned Eighty-Five Thousand ($85,000) Dollars or any part thereof in the continuing business, he shall have the option to do so either (1) by requiring the Estate of Jonas Meyer to retain said sum in the business as a continuing investment in its capital, or (2) by requiring said Estate to become a special partner in the continuing business by the contribution of said sum, or (3) by borrowing said sum from the Estate of Jonas Meyer. * * *

"If Z. Edwin Meyer elects to continue the business and irrespective of which of the options given to him is selected by Z. Edwin Meyer, then the Estate of Jonas Meyer shall permit to remain therein and Z. Edwin Meyer may retain in and for the continuing business, for a period of ten (10) years (but in no event longer than Z. Edwin Meyer continues to manage the business) the sum of Eighty-Five Thousand ($85,000) Dollars out of the interest of Jonas Meyer or his Estate in the copartnership. The Estate of Jonas Meyer may withdraw the said sum of Eighty-Five Thousand ($85,000) Dollars in the following manner:—Twenty (20%) percent thereof at the end of three (3) years from the date of the death of Jonas Meyer, Twenty percent (20%) at the end of five (5) years, Twenty percent (20%) at the end of seven (7) years and the balance at the end of ten (10) years; but Z. Edwin Meyer may elect to require the Estate to withdraw this Eighty-Five Thousand ($85,000) Dollars or any part thereof at any time or times earlier than hereinbefore specified. * * * *

"If Z. Edwin Meyer dies or becomes wholly incapacitated before the full repayment or return of the money so left in or for the continuing business, then the Executors or Administrators of the estate of Jonas Meyer shall have equal voice with the legal representatives of Z. Edwin Meyer or of his estate in the disposition of the business or of its assets, in order to protect the interests of the estate of Jonas Meyer. * * *

"So long as the Estate of Jonas Meyer retains the said Eighty-Five Thousand ($85,000) Dollars, or any part thereof, in the business, whether by leaving it in the business as a continuing investment in its capital, or by becoming a Special Partner, or by lending said sum to Z. Edwin Meyer, the Estate shall receive twenty (20%) percent of the net profits of the business, to be computed and paid annually. * * * The Estate of Jonas Meyer shall also receive semi-annually, on June 30th and December 31st of each year, interest on the actual amount retained in the business at the beginning of each semi-annual period (which is likewise to be deducted before net profits are computed) ; such interest to be paid at the rate of six percent (6%) per annum if the Estate leaves the money in the business as a continuing investment or if the Estate becomes a Special Partner in the business, or at the rate of five and one-half percent (5½%) if the Estate lends the money to Z. Edwin Meyer. * * * * "

In addition to his initial choice of options, Z. Edwin Meyer retained the right to change from one option to another at any time.

After the death of Jonas Meyer, the surviving partner, Z. Edwin Meyer, made a timely election of the first option, namely, to require the estate to retain an investment in the continuing business amounting approximately to $80,000.

Under the will of Jonas Meyer, the taxpayer was his sole legatee.

During his lifetime Jonas Meyer had procured two policies of life insurance on the life of his son and partner, Z. Edwin Meyer: one in the sum of $17,500 and the other in the sum of $7,500. These policies were both issued under date of May 2, 1924, on the continuous payment plan. The gross premiums were $448.35 and $178.80, respectively. The policies named Jonas Meyer as beneficiary. The investment of the decedent in the continuing business was, by the executors of the estate of Jonas Meyer, assigned to the taxpayer on or about March 8, 1945. The aforesaid policies of insurance also carried the following endorsement:

"May 29, 1940: title and interest assigned to Hannah Meyer, widow of the deceased absolute assignee.

"June 12, 1940: Under absolute assignment, Mrs. Hannah Meyer has the right to change and successively change to any beneficiary prior to the maturity of the policy."

The taxpayer paid the premiums on the policies in the years 1940 and 1941.

The partnership business was continued by Z. Edwin Meyer after the death of Jonas Meyer and has been and is being conducted and managed by him personally and without any copartners. He is in active charge of the business, which consists of the sale of bathroom and plumbing supplies and equipment in export trade, principally to the Latin American countries. He alone makes contracts with suppliers of material and no one else has personal contact with them. More than fifty percent of the business is done with six large accounts, all of which are handled by said Z. Edwin Meyer personally. He also handles all bank financing and arranges for credit which is a substantial factor in the business. He is in personal and continuous contact with all accounts and with the entire business. Although steamship space has been exceedingly difficult to obtain since 1939, he has been able to obtain shipping space for the business solely through his personal connections and contacts during the last thirty years with the various steamship companies.

The taxpayer testified that she is the mother of the surviving partner of the business; that she relied upon her son to handle all her affairs and that she continued the insurance policies on her son's advice which, she said, he gave her in order that she might protect herself in the event of his death.

The question which is presented by this litigation is brought into focus by § 121 of the Revenue Act of 1942, which amended § 23(a) of the Internal Revenue Code so as to permit the deduction of non-business expenses incurred "for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income", which amendment was made retroactive to the year 1938.

The relevant statutes are as follows: Section 23 of the Internal Revenue Code, as amended, 26 U.S.C.A. § 23, provides in part:

"In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

Section 24 of the Internal Revenue Code, 26 U.S.C.A. § 24, provides in part:

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of— * * *

"(4) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy;".

The Commissioner has disallowed the deduction of the premiums paid by the taxpayer in 1940 and 1941.

Taxpayer bears the burden of establishing that the premiums in question constitute "ordinary and necessary" expenses incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income and that they are not premiums paid on the life of an officer in the taxpayer's business. Cf. P. Dougherty Co. v. Commissioner, 4 Cir., 1946, 159 F.2d 269, 272, certiorari denied 1947, 331 U.S. 838, 67 S.Ct. 1515, 91 L.Ed. 1850.

Under the option of investment adopted, Z. Edwin Meyer is not indebted to the taxpayer. The insurance is not security for a debt. Collection of the life insurance will not pro tanto diminish the tax-

payer's claim against the continuing business. Taxpayer is not a creditor of insured. Therefore, cases permitting the deduction of premiums paid by creditors on policies covering the life of their debtors as ordinary and necessary expenses for conserving or maintaining their property or interest in the debt are inappropriate. Cf. First National Bank & Trust Co. of Tulsa v. Jones, 10 Cir., 1944, 143 F.2d 652; Dominion National Bank v. Commissioner, 1932, 26 B.T.A. 421.

The stipulated facts strongly suggest that Z. Edwin Meyer is a vital income-producing factor of the business. Had taxpayer been a stranger, investing new capital in a business whose income depended on one man's life, insurance against his death might conceivably be a reasonable expense for the purpose of protecting the production or collection of income, within § 23(a) (2), bearing " * * * a reasonable and proximate relation to the management of property held for the production of income". See Trust of Bingham v. Commissioner, 1945, 325 U.S. 365, 370, 65 S.Ct. 1232, 1235, 89 L.Ed. 1670, 163 A.L.R. 1175.

But the taxpayer here is not a stranger, but the insured's mother, who inherited a policy on his life from her husband, his father. As a practical investment decision it may have been at least as prudent to continue the policies in force as to cash them in, entirely apart from any participation in the business managed by the insured. Taxpayer's income interest which might be jeopardized by insured's death was in 20% of the business' net income after payment of insured's $12,000 annual salary. This interest was subject to divestment at will by the insured. In view of the close family relationship between taxpayer and insured, which would account for the insurance apart from any business investment; the fact that she did not initiate the insurance; the fact that the policies were ordinary life policies, although her interest in the business might terminate at any time; and the fact that at the time the premiums here involved were paid, the Estate of taxpayer's husband had title to the investment in the business, the taxpayer cannot be said to have established that her premium payments were ordinary and necessary expens-

es incurred for the purpose of protecting the production of income or for the conservation of property held for the production of income. Her testimony that she continued the policies upon her son's advice to protect her in case he died is at least as consistent with the normal purpose of any mother who is or may be dependent upon her son for support as it is with any purpose to protect a specific source of income from a business.

Only if the taxpayer had established that she continued the policies in effect for the purpose of protecting her limited and defeasible interest in the business would it be necessary to consider either the Government's contention that § 24(a) (4) applies by implication to § 23(a) (2) or the question whether the taxpayer was carrying on a trade or business with the insured. She has failed so to prove.

Judgment for defendant.